IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAD MASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-05-1383-HE |
| v. | ) | |
| | ) | |
| JAMES A. YATES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

SUPPLEMENTAL REPORT  AND  RECOMMENDATION

Plaintiff, a Hawaii state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. §1983.  Plaintiff is incarcerated at a private prison in Arizona.  He alleges multiple constitutional deprivations related to his previous confinement at a private prison, Diamondback Correctional Facility ("DCF"), located in Oklahoma, and in a disciplinary proceeding conducted at the Arizona private prison.  The Defendants named in the Complaint are DCF Assistant Warden Yates, DCF correctional officer Mayfield, DCF mailroom clerk Sacket and a correctional official in Hawaii, Defendant Kimoto, who is identified in the Complaint as the Hawaii Contract Monitor between Hawaii and the Corrections Corporation of America, Inc. ("CCA").  CCA owns and operates DCF and the Arizona private prison in which Plaintiff is currently incarcerated. Two correctional officers at the Arizona private prison, Estrada and Stansel, named as

1

Defendants in the Complaint were previously dismissed from the action for lack of personal jurisdiction. (Doc. # 8)(Order, Heaton, D.J.).

The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). Defendants Yates, Mayfield, and Sacket have moved to dismiss the cause of action pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff has failed to exhaust available administrative remedies concerning all of his claims and, alternatively, for failure to state a claim for relief. Defendants Yates, Mayfield, and Sacket have also filed an Amended Motion to Dismiss in order to correct their mistaken assertion in their original Motion to Dismiss that Plaintiff is an Arizona state prisoner. (Doc. # 24). Defendant Kimoto has separately moved to dismiss the cause of action based on the same grounds. Plaintiff has responded to the motions to dismiss. Defendants Yates, Mayfield, and Sacket have also caused the filing of a special report consistent with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). (Doc. # 16)(hereinafter "Special Report"). Defendants Yates, Mayfield, and Sacket have supplemented the Special Report with documents from the Hawaii Department of Public Safety. (Doc. # 22). For the following reasons, it is recommended that Defendants' motions to dismiss be granted in part and converted in part to motions for summary judgment and, so converted, that the motions be granted in favor of Defendants.

I. Plaintiff's Claims

In his Complaint, Plaintiff alleges that on September 24, 2004, while Plaintiff was incarcerated at DCF, Defendants Yates, Mayfield, and Sacket opened incoming mail

addressed to Plaintiff. Plaintiff states that the mail contained several photographs and five of the photographs appeared to the correctional officers to be thicker than the other photographs. Plaintiff also states that when Defendants Yates, Mayfield, and Sacket tore apart the five photographs, they discovered $500.00 in cash hidden within the photographic paper. This cash was confiscated by the DCF officials and later donated to an inmate welfare fund maintained by DCF. Plaintiff contends that the actions of Yates, Mayfield, and Sacket in confiscating the cash from Plaintiff's incoming mail and tearing apart and thereby destroying the five photographs (1) violated his First Amendment right to receive the photographs and his First Amendment right "to return cash to sender" and (2) violated his Fourth Amendment right to be protected from an unreasonable search and seizure of both the photographs and the cash.

Plaintiff also alleges that the actions of Defendants Yates, Mayfield, and Sacket violated his First Amendment and due process rights to receive notice that the photographs and cash had been removed from his mail because CCA and Hawaii policies mandate that notice be given to an inmate when items are removed from the inmate's mail.

Plaintiff alleges that he was subjected to unconstitutional deprivations in connection with disciplinary proceedings conducted at the Arizona private prison after he was transferred to that prison at an unspecified date. Plaintiff alleges that Defendant Mayfield issued a disciplinary misconduct charge against Plaintiff for a violation of "any state, federal, or local law" in connection with the confiscated cash. Plaintiff asserts that this disciplinary charge was unconstitutionally vague and deprived Plaintiff of due process under the

Fourteenth Amendment.  Plaintiff states he was found guilty of the misconduct offense in a disciplinary proceeding conducted at the Arizona private prison, but he does not allege what disciplinary sanctions were imposed for the misconduct.  Plaintiff alleges that his appeal of the disciplinary findings to the Arizona private prison's warden was denied.  Plaintiff alleges that on April 12, 2005, he was informed in "a memo dated 2/23/05, from Roberta Hickey through defendant James A. Yates," that "[a]fter the disciplinary hearing it was determined the money was contraband [and the money would] be donated to the Inmate Welfare Fund." Complaint, at 5.

Plaintiff contends that Defendant Kimoto "had the authority and responsibility to authorize the return of plaintiff's cash to sender or have cash credited to his account." Id. Plaintiff states that Kimoto informed him by letter that the confiscated cash was donated to the Inmate Welfare Fund. He alleges that Defendant Kimoto's actions "in refusing to authorize return of cash to plaintiff and having cash placed into an [sic] so-called inmate welfare fund constitutes an unreasonable seizure under the Fourth Amendment and deprives plaintiff of the due process in confiscation of property that he is entitled under the Fourteenth Amendment to the United States Constitution." Complaint, at 7.  Plaintiff seeks compensatory damages and injunctive and declaratory relief.

II. Background

The uncontroverted Special Report reflects that an incident report was completed by a DCF official on September 24, 2004, indicating that at 4:00 p.m. on that date the DCF mailroom clerk Sacket was going through the mail and noticed some photographs were

4

bulkier than others and that these photographs were in envelopes addressed to Plaintiff. The incident report states that DCF official Mayfield was called and that he noticed five photographs out of approximately 30 photographs were twice as thick as the others. DCF official Mayfield advised DCF official Sacket to alert DCF Assistant Warden Yates, and the photographs were then opened and a $100.00 bill was discovered "behind each photo[graph]." Special Report, Ex. F. The officers determined that the cash was contraband and placed the cash in an evidence locker pending investigation, according to the incident report. Incident statements completed by DCF officials Mayfield, Yates, and Sacket reflect that photographs were taken of the seized cash and of the photographs in which the cash was found and also of the envelopes in which the cash was mailed to the prison. Special Report, Ex. F. Copies of these photographs taken by DCF officials appear in the Special Report. Special Report, Ex. F.

Plaintiff was charged with the disciplinary misconduct of "violation of any state, federal, or local law" and also with another misconduct for "unauthorized use of mail and or telephone." Special Report, Ex. G. The disciplinary misconduct report reflects that Defendant Mayfield issued the report on October 25, 2004, and that Plaintiff received a copy of the disciplinary report on November 1, 2004. In describing the offense, Defendant Mayfield stated in the disciplinary report that "[f]ollowing an investigation starting on 9-24-04 and ending on 10-25-04 this investigator is charging I/M Mason Tad .... with Major 27 Law Violation for his mother sending him $500.00 in [$]100.00 bills through mail and hidden between pictures. This is a law violation for introducing contraband into a penal

institution and CCA policy violation of the mail." Special Report, Ex. G.

In a disciplinary investigation report dated November 4, 2004, and completed at the Arizona private prison, the investigator states that on September 24, 2004, the staff at DCF discovered $500.00 in cash concealed among photographs in incoming mail addressed to Plaintiff and this cash was impounded.  The disciplinary investigation report also states that on November 3, 2004, the investigator recorded telephone calls placed by Plaintiff to his mother in which Plaintiff "made reference to the currency as well as his recent transfer" to the Arizona private prison. Special Report, Ex. G, at 3.  The investigator stated that the conversation between Plaintiff and his mother "suggested [Plaintiff] had received currency through the mail in the past and was planning more attempts" and that Plaintiff had refused to answer any questions posed to him during an interview with the investigator. Id.

A report of the disciplinary hearing conducted on the misconduct charge on November 10, 2004, reflects that Plaintiff was found guilty of "C-27 [and] C-9" and was found not guilty of "C-26."  Special Report, Ex. G, at 2.  The punishment imposed was 45 days of disciplinary segregation for "attempts to receive contraband." Id.  The disciplinary hearing report states that the evidence relied on in reaching this decision included the staff reports, photographs, and the inmate's statements.

Plaintiff appealed the disciplinary misconduct to the Arizona private prison's warden who affirmed the decision and sanctions imposed for the misconduct.  The warden stated that the cash could be considered "escape materials" and "you are guilty of the above charge." Special Report, Ex. G, at 13.

III. <u>Due Process Liberty Interest/Premature Claims - Disciplinary Sanctions</u>

Plaintiff contends that he was denied due process as a result of the disciplinary proceeding conducted at the Arizona private prison for the "Violation of any State, Federal, or Local Law" (hereinafter "law violation") misconduct charge arising out of actions that occurred at DCF.  Plaintiff contends that he received inadequate notice of the misconduct charge and/or that there was insufficient evidence to support the finding of guilt in the disciplinary proceeding.  The only sanction imposed upon Plaintiff for the "law violation" misconduct was 45 days of confinement in disciplinary segregation.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  Furthermore, "[a] state inmate's due process rights are implicated only when a state's actions impinge on a protected liberty interest." <u>Stephens v. Thomas</u>, 19 F.3d 498, 501 (10th Cir. 1994).  Assuming, without finding, that Plaintiff exhausted administrative remedies[1] concerning his due process claims related to the disciplinary proceeding conducted at the Arizona private prison for the "law violation" misconduct, there is nothing in the record to indicate that Plaintiff's placement in disciplinary segregation for 45 days "impose[d] atypical and significant hardship upon [him] in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).  As the Court found

---

[1]It is not clear from the record or the parties' pleadings what procedures Plaintiff was required to follow to exhaust administrative remedies concerning the disciplinary proceeding conducted at the Arizona private prison for the misconduct charge issued against him at DCF.

in <u>Sandin</u>, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." <u>Id.</u> at 485.  Thus, the Plaintiff's temporary confinement in disciplinary segregation as a sanction for the misconduct did not implicate a liberty interest, and he is not entitled to any specific procedural protections in relation to the disciplinary proceeding and sanctions imposed upon him.

Even if Plaintiff could demonstrate that his placement in disciplinary segregation as a result of the "law violation" misconduct was an atypical or significant variation from the usual conditions of his confinement at the Arizona private prison, and that the confinement in disciplinary segregation thereby implicated a liberty interest, Plaintiff's 42 U.S.C. § 1983 claims of constitutional violations stemming from the disciplinary proceeding and sanctions imposed upon him at the Arizona private prison are premature.  In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court recognized that damages may not be recovered in a 42 U.S.C. §1983 action "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254." <u>Id.</u> at 487.  Three years later, in <u>Edwards v. Balisok</u>, 520 U.S. 641 (19997), the Supreme Court extended the holding in <u>Heck</u> to actions challenging prison disciplinary proceedings.  The Court held that a claim for damages and equitable relief

brought by a state prisoner challenging the validity of procedures used to deprive him of earned credits is not cognizable under 42 U.S.C. § 1983 unless the prisoner can demonstrate that the sanctions imposed in the disciplinary proceeding have previously been invalidated. Edwards, 520 U.S. at 643.

Plaintiff seeks damages for allegedly unconstitutional procedures employed in a disciplinary proceeding conducted at an Arizona private prison and sanctions imposed for a misconduct.  Under these circumstances, and because Plaintiff has not shown that the misconduct conviction has previously been invalidated, his request for damages and other relief related to the prison disciplinary proceeding should be dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) based on Heck and Edwards.

IV. Standard of Review

Defendants move to dismiss the cause of action pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6) based on Plaintiff's failure to comply with the pleading requirements established in Steele v. Federal Bureau of Prisons, 355 F.3d 1204 (10th Cir. 2003), cert. denied, 543 U.S. 925 (2004), for pleading exhaustion of administrative remedies.  However, the pleading requirements of Steele are intended to "facilitate the district court's *sua sponte* review on the exhaustion issue." Id. at 1211.  The undersigned declines to dismiss the cause of action on this basis because the proper resolution of Defendants' motions requires consideration of all of the evidence presented by the parties, including the Special Report, and not just Plaintiff's pleadings.

Defendants alternatively move to dismiss the cause of action pursuant to 42 U.S.C.

§ 1997e(a) and Fed. R. Civ. P. 12(b)(6) due to Plaintiff's failure to exhaust administrative remedies.   Defendants have submitted documentary evidence in support of their motions to dismiss for the Court's review in resolving their dispositive motions.   Because documents outside of the pleadings submitted by both parties have been reviewed in resolving the motions to dismiss filed by Defendants Yates, Mayfield, Sacket, and Kimoto, the motions to dismiss on the issue of exhaustion of administrative remedies are converted to motions for summary judgment.   See Steele, 355 F.3d at 1212 (recognizing that  conversion of a motion to dismiss to one for summary judgment may be appropriate where a defendant files a motion to dismiss requiring consideration of additional factual material outside of the pleadings and the prisoner's complaint and supporting materials).   Plaintiff was given adequate notice of the opportunity to submit documentary materials outside of the pleadings. See Orders entered May 4, 2006 (Doc. # 18) and May 23, 2006 (Doc. # 25).   Plaintiff has submitted his own affidavit in response to Defendants' dispositive motions.

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   In considering a motion for summary judgment, the Court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party.   Kaul v. Stephan, 83 F.2d 1208, 1212 (10th Cir. 1996); Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. State of Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989).   A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party.   Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A special report prepared under the authority of Martinez, supra, is treated as an affidavit, and the plaintiff's complaint is treated as an affidavit as well if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury.  Hall, 935 F.2d at 1111.

V. Exhaustion of Administrative Remedies

Plaintiff's remaining claims relate to the confiscation of the money found by DCF officials in incoming mail addressed to Plaintiff.  He alleges that the confiscation of the money and the destruction of the photographs in which the money was concealed violated his First, Fourth, and Fourteenth Amendment rights.

In 1995, the Prison Litigation Reform Act of 1995 ("PLRA") was enacted.  One provision of the PLRA, codified at 42 U.S.C. §1997e(a), directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This provision has been interpreted by the Supreme Court to apply "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Moreover, exhaustion of

administrative remedies under the PLRA is required for all inmates seeking relief in federal

district court regardless of the type of relief available under the institutional administrative

procedure. Booth v. Churner, 532 U.S. 731, 741 (2001).  Section 1997e(a) "imposes a

pleading requirement on the prisoner," who must "(1) plead his claims with 'a short and plain

statement .... showing that [he] is entitled to relief,' in compliance with Fed. R. Civ. P.

8(a)(2), and (2) 'attach[ ] a copy of the applicable administrative dispositions to the

complaint, or, in the absence of written documentation, describe with specificity the

administrative proceeding and its outcome.'" Steele, 355 F.3d at 1210(quoting Knuckles El

v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000)).  "In the absence of particularized averments

concerning exhaustion showing the nature of the administrative proceeding and its outcome,

the action must be dismissed under §1997e." Id. (quotation omitted).  "Defendants with a

colorable argument based on lack of exhaustion ... may raise it in a dispositive motion, to be

addressed promptly by the court."  Id. at 1212.  Under these circumstances, the  "court may

consider the attached administrative materials" provided by the plaintiff, or if none are

provided by the plaintiff then the court may consider administrative materials or a declaration

submitted by the defendant. Id.   The "PLRA contains a total exhaustion requirement" and

"the presence of unexhausted claims in [a] complaint" requires the dismissal of the complaint

without prejudice. Ross v. County of Bernalillo, 365 F.3d 1181, 1189 (10th Cir. 2004).

     With respect to the issue of exhaustion, Plaintiff alleges in his Complaint that he

"attached a grievance with his appeal" of the misconduct.  Complaint, at 5.  He alleges that

in this grievance he requested a receipt for the confiscated cash taken from his incoming mail and that the cash be credited to his prison account.  Plaintiff contends that he submitted a second grievance on March 11, 2005, in which he requested that the confiscated cash be returned to its sender and that this grievance was "also denied." Complaint, at 5.  Petitioner alleges that he sent a grievance to Defendant Kimoto on May 23, 2005, in which he stated "that if she thought that taking money that is not hers and donating it without consent did not raise legal issues, she was mistaken."  Complaint, at 6.  Plaintiff contends Defendant Kimoto responded that he was free to file a civil rights lawsuit against her and that this would be her last letter on the issue.  In his Complaint, Plaintiff asserts in conclusory terms that he "wrote letters/grievances to James A. Yates (Warden), Roberta Hickey (CCA Diamondback Grievance Coordinator), Karl Stansel (Warden), and Shari Kimoto (Hawaii Contract Monitor)." Complaint, at 6.  He contends that he has exhausted administrative remedies because the Hawaii Contract Monitor advised him he was free to file a civil rights lawsuit against her.

Plaintiff provides no documentary evidence with his Complaint showing that he exhausted administrative remedies concerning his claims of constitutional deprivations. Defendants Yates, Mayfield, and Sacket have attached to their Motion to Dismiss ("Defendants' Motion to Dismiss") a copy of a DCF policy describing the grievance procedure available to inmates at the facility. Defendants' Motion to Dismiss, Ex. A (CCA Corporate and Facility Policy, DCF Policy 14-5).  The DCF grievance policy requires that inmates first pursue an informal resolution by submitting a "Request to Staff" form to the

13

appropriate staff member.  If not satisfied with the response received to this informal request, the inmate may then file a grievance on a grievance form with the Facility Grievance Officer. This procedure must be initiated within seven days of the inmate's awareness of the alleged incident. If not satisfied with the decision of the Facility Grievance Officer, the inmate may appeal to the Warden/Administrator or designee by completing the Request for Warden/Administrator Review portion of the grievance form and submitting this form to the Warden/Administrator.  For Hawaii inmates, an appeal of a grievance decision must be submitted to the Grievance Officer at the Halawa Correctional Facility in Aiea, Hawaii. However, the policy provides that Hawaii inmates may appeal only grievance decisions "pertaining to their placement at DbCF." Defendants' Motion to Dismiss, Ex. A, at 6.

Defendants Yates, Mayfield, and Sacket have provided documentary evidence attached to their Motion to Dismiss in support of their Motion to Dismiss and Amended Motion to Dismiss and Defendant Kimoto has also provided documentary evidence attached to her Motion to Dismiss in support of the dispositive motion.  The documentary evidence presented by Defendants Yates, Mayfield, and Sacket show that Plaintiff submitted a grievance to an Arizona private prison official on November 8, 2004. Defendants' Motion to Dismiss, Ex. B, at 1-6.  Defendants contend that this grievance was filed out of time and was filed with the wrong facility because it was submitted to the Arizona private prison. However, there is no indication in the record that Plaintiff received a response to this grievance.

According to Defendants, Plaintiff submitted a second grievance on March 11, 2005,

14

but Defendants allege that Plaintiff again submitted the grievance to the wrong facility. This grievance, which is attached to Defendants' Motion to Dismiss, shows that Plaintiff requested that the "cash ... be returned to sender and write-up expunged." Defendants' Motion to Dismiss, Ex. B, at 7.   This grievance was denied by the Arizona facility's Grievance Officer on March 14, 2005.  The Grievance Officer stated as his reasons for the decision that the grievance was out-of-time because Plaintiff had seven days from the date of the incident to file a grievance. Evidentiary documents submitted by Defendants Yates, Mayfield, and Sacket show that Plaintiff appealed this grievance decision to the Arizona facility's Warden/Administrator, and the Warden/Administrator responded on the grievance form that "[t]his issue have [sic] already been address [sic]. The money is contrand [sic].  File a grievance with Diamond Back [sic]." Defendants' Motion to Dismiss, Ex. B, at 7.

Also attached to Defendants' Motion to Dismiss is documentary evidence consisting of a copy of a DCF Memorandum addressed to Plaintiff from DCF's Grievance Coordinator, and dated February 23, 2005, in which Plaintiff was advised that "[a]fter the disciplinary hearing it was determined the money was contraband.  The confiscated money will be donated to the Inmate Welfare Fund." Defendants' Motion to Dismiss, Ex. B, at 11.

Defendants Yates, Mayfield, and Sacket assert that Plaintiff submitted a grievance, dated April 19, 2005, with the DCF Grievance Coordinator.  A copy of this grievance is attached to Defendants' Motion to Dismiss.  In this grievance Plaintiff stated that he had received a letter from a DCF official advising Plaintiff the confiscated money was being donated to an Inmate Welfare Fund.  Plaintiff "demand[ed] that [the] cash taken from my

15

mail be either credited to my prison account or returned to sender." Defendants' Motion to Dismiss, Ex. B, at 8, 9. In an attachment to the grievance, Plaintiff stated that "[t]his taking of my cash by A/W Yates and donating it to the Inmate Welfare Fund raises serious legal issues. It is my belief that A/W Yates decision to do this was arbitrary or according to notion or whim rather than law." Defendants' Motion to Dismiss, Ex. B, at 9.

There is documentary evidence attached to Defendant Kimoto's Motion to Dismiss showing that Plaintiff submitted numerous letters to Defendant Kimoto in her capacity as the Hawaii Contract Monitor and to another Hawaii Contract Monitor beginning in February 2005. In response to one of Plaintiff's letters, Defendant Kimoto advised Plaintiff that she had reviewed the investigation report and the recorded phone call between Plaintiff and his mother, and that she did not see any "legality concerns on this issue." Defendant Kimoto's Motion to Dismiss, Ex. A, at 15. Defendant Kimoto suggested in this responsive correspondence that Plaintiff's and his family's actions posed a security threat to the prison facility and that the confiscated funds were donated to the Inmate Welfare Fund because prison officials were unable to verify why such a large amount of cash was being sent to the inmate concealed behind photographs.

In another letter from Defendant Kimoto responding to Plaintiff's complaints about the confiscated cash, Defendant Kimoto advised Plaintiff that he misunderstood the reasons that led to his misconduct. She explained that "[i]nmates openly receiving cash in the mail are alerted by the mailroom to send the monies out. In your case, cash was CONCEALED in the back of family pictures that may have gotten past the mail censors had they not been

doing their job.  Because of this deviance, the pictures were CONFISCATED and deemed to be CONTRABAND.  This act clearly threatens the good government of the facility ..."  Defendant Kimoto's Motion to Dismiss, Ex. A, at 23.

Plaintiff apparently attempted to submit a grievance concerning Defendant Kimoto's responses to his correspondence.  Defendant Kimoto's Motion to Dismiss, Ex. A, at 25.  Although this document states it was being submitted to the State of Hawaii Department of Public Safety by Plaintiff on February 1, 2005, the body of the document indicates that Plaintiff wished to submit a grievance concerning his unsuccessful informal discussion/resolution attempts with Defendant Kimoto between February 9, 2005 and June 1, 2005.  The document also indicates Plaintiff mailed the grievance on February 1, 2006.  Id. (See Plaintiff's hand-written note in upper right hand corner of grievance form).  In this purported grievance, Plaintiff merely asked if he had exhausted administrative remedies and again requested that the "$500 dollars [be] credited to [his] prison account or returned to sender," but he did not indicate any basis for this request.  Id.  There is no evidence of a response to this purported grievance.

In response to Defendants' motions to dismiss, Plaintiff has submitted a declaration under penalty of perjury in which Plaintiff states that he was "not informed of the grievance procedure while at [DCF]," that "[a] copy of the grievance procedure was not included in the Inmate Handbook given to me at my arrival at [DCF]," and that "[o]n 11/10/04, at my disciplinary at [the Arizona private prison], I was not told that my cash was going to be donated to an inmate welfare fund." Plaintiff's Response, att.

17

Plaintiff admits that he became aware of the confiscation of the cash from his incoming mail on November 1, 2004, when he was served with the misconduct charge. Plaintiff's only explanation for his failure to follow the three-step procedure outlined in DCF's administrative grievance policy within the time limit set forth in the policy is his lack of awareness of the policy.  Plaintiff's assertion that he was unaware of DCF's administrative grievance policy does not excuse his failure to follow the established policy of the prison. See Yousef v. Reno, 254 F.3d 1214, 1221 (10th Cir. 2001)(rejecting assertion that absence of specific reference to administrative remedy procedure foreclosed availability of exhaustion).  The statutory exhaustion requirement in 42 U.S.C. § 1997e(a) is mandatory, and the Supreme Court has clearly stated that arguments of "futility or other exceptions" should not be considered. Booth, 532 U.S. 741 n. 6.  Plaintiff does not contend that either DCF officials or the Arizona prison's officials interfered with his ability to pursue a grievance with DCF officials.   See Jernigan v. Stuchell, 304 F.3d 1030, 1033 (10th Cir. 2002)(holding court need not consider whether prison official should be equitably estopped from relying upon the exhaustion defense where prisoner could not show detrimental reliance on prison officials).

Plaintiff submitted a grievance to officials at the Arizona private prison.  However, he did not comply with the first step of the administrative grievance procedure by submitting a request to staff in an effort to informally resolve the issues raised in the grievance.  On the grievance form, Plaintiff merely stated "n/a," or "not applicable" in the space in which he was asked to describe his information resolution attempt. Special Report, Ex. E.  Moreover,

in that grievance Plaintiff only asserted that Defendants Mayfield and Sacket violated CCA policies.  Thus, even assuming this grievance was timely and properly submitted, the grievance does not demonstrate that Plaintiff exhausted administrative remedies concerning the constitutional claims asserted in the Complaint.

Plaintiff did not submit a grievance to DCF officials until several months later, when the time limit prescribed by the policy had long since expired.  Plaintiff's submission of a grievance to the DCF grievance officer after the time limit expired does not satisfy the exhaustion requirement.  See Ross, 365 F.3d at 1186 (holding time-barred grievance does not exhaust administrative remedies).   Moreover, the only issue raised in this grievance was Plaintiff's contention that the donation of the confiscated cash to an inmate welfare fund was an "arbitrary" decision.  Special Report, Ex. E, at 9.  Thus, this grievance failed to raise all of the constitutional claims asserted in the Complaint and does not demonstrate exhaustion of the available administrative remedial procedure.

Plaintiff does not show that he took affirmative, diligent steps to pursue his administrative rights after he became aware of the actions of DCF officials that form the basis for the instant cause of action.  It is undisputed that DCF had an established administrative grievance procedure, and it is undisputed that Plaintiff did not exhaust this procedure.  Plaintiff's assertion that his correspondence with Defendant Kimoto or Defendant Kimoto's responses to his correspondence exhausted his administrative remedies is without merit.  Jernigan, 304 F.3d at 1032 (prisoner's argument that he gave notice of his claims to various defendants by means other than the grievance process failed to demonstrate

exhaustion of administrative remedies because "the doctrine of substantial compliance does not apply"). Accordingly, Plaintiff has failed to demonstrate his exhaustion of available administrative remedies concerning his claims of constitutional deprivations stemming from the confiscation of cash and destruction of photographs from his incoming mail. Hence, Defendants' motions to dismiss, converted to motions for summary judgment, should be granted and judgment issue in favor of Defendants and against the Plaintiff with respect to these claims.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended Defendants Yates, Mayfield, and Sacket's Motion to Dismiss (Doc. # 17) and Amended Motion to Dismiss (Doc. # 24) and Defendant Kimoto's Motion to Dismiss (Doc. # 23) should be GRANTED with respect to Plaintiff's claims of constitutional deprivations related to the disciplinary proceeding and sanctions imposed for a "law violation" at the Arizona private prison, and these claims should be dismissed without prejudice as premature under <u>Heck</u>, <u>supra</u>, and <u>Balisok</u>, <u>supra</u>, With respect to Plaintiff's claims of constitutional deprivations related to the confiscation of cash and the destruction of photographs from his incoming mail by Defendants Yates, Mayfield, and Sacket, Defendants' motions to dismiss should be converted to motions for summary judgment and, so converted, the motions should be granted and judgment issue in favor of Defendants and against the Plaintiff due to Plaintiff's failure to exhaust available

administrative remedies pursuant to 42 U.S.C. § 1997e(a).  Plaintiff is advised of his right

to file an objection to this Supplemental Report and Recommendation with the Clerk of this

Court by _____June 27th_____, 2006, in accordance with 28 U.S.C. § 636 and LCvR 72.1.

The Plaintiff is further advised that failure to make timely objection to this Supplemental

Report and Recommendation waives his right to appellate review of both factual and legal

issues contained herein. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Supplemental Report and Recommendation disposes of all issues referred to the

undersigned Magistrate Judge in the captioned matter.

ENTERED this _____7th_____ day of _____June_____, 2006.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE